```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/22/17
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TONY SANCHEZ,

                Plaintiff,    :    14cv0726 (DF)

    -against-    :    **MEMORANDUM AND ORDER**

I&A RESTAURANT CORP. (d/b/a
EL ECONOMICO), FRANKLIN VARGAS, and
MARILYN VARGAS,

                Defendants.
------------------------------------------------------------X

**DEBRA FREEMAN, United States Magistrate Judge:**

Following a bench trial and entry of judgment in his favor in this wage-and-hour case, plaintiff Tony Sanchez ("Plaintiff") seeks an award of attorneys' fees and costs. (Dkt. 48.) Plaintiff, however, had only limited success in this action; while he had asserted claims against defendants I&A Restaurant Corp. (d/b/a El Economico) ("El Economico"), Franklin Vargas ("Vargas"), and Marilyn Vargas (collectively, "Defendants") under both the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), he was ultimately unable to establish FLSA coverage, and he recovered but a small fraction of what he had sought on his NYLL claims. Under these circumstances, and for the other reasons discussed below, although the Court finds that Plaintiff is entitled to an award of fees and costs under the NYLL, the Court will award less than Plaintiff seeks.

## BACKGROUND

The factual background and procedural history of this case, as well as the evidence presented at trial, are described in detail in the Findings of Fact and Conclusions of Law issued by the Court following the bench trial of Plaintiff's claims, and familiarity with the Court's prior

determinations is assumed.[1] In short, Plaintiff, who worked as a cook at the El Economico restaurant, made claims under both federal and state law for an alleged denial of overtime pay and other required compensation, for the three-and-a-half-year period from July 8, 2010 to December 31, 2013. The Court, however, found Plaintiff's trial testimony to be inconsistent, exaggerated, and almost entirely incredible. Defendants had contended, from the outset of the case, that El Economico's gross annual sales fell far short of the $500,000 required to render it a covered enterprise under the FLSA, and Plaintiff offered no credible testimony or documentary evidence at trial to demonstrate otherwise.[2] Further, as to Plaintiff's NYLL claims, the Court ended up crediting defendant Vargas's testimony over Plaintiff's, finding that, although Plaintiff was denied certain required overtime pay, this occurred only during the period from July 8, 2010 to December 31, 2010 – a period of less than six months, and that he worked fewer hours than stated. The Court also found no basis for Plaintiff's wage-notice claim under the New York Wage Theft Protection Act ("WTPA"), although it did find him entitled to statutory damages under Section 195(3) of the WTPA for Defendants' failure to provide him with required wage statements.

Despite the dismissal of Plaintiff's FLSA claims after trial, the Court retained jurisdiction over Plaintiff's pendent state-law claims under the NYLL and WTPA, in the interests of

---

[1] *See* Findings of Fact and Conclusions of Law, dated Aug. 15, 2016 ("8/15/16 Findings") (Dkt. 47).

[2] The Court made no finding that Plaintiff or his counsel had acted in bad faith in asserting or continuing to press an FLSA claim through trial, but Plaintiff's lack of evidence to support his claim of FLSA coverage did lead the Court to note, in its post-trial findings, "some concern that counsel either did not adequately investigate the viability of Plaintiff's FLSA claims, or asserted and proceeded on those claims primarily for the purpose of obtaining and maintaining federal jurisdiction over this action, and not because Plaintiff actually had good-faith evidentiary support for his assertion that El Economico had annually grossed more than $500,000 in sales." (8/15/16 Findings, at 25 n.7.)

2

economy, convenience, fairness, and comity. (8/15/16 Findings, at 24-25.) It awarded Plaintiff $7,087.50 in damages for the unpaid overtime wages, $1,771.88 in liquidated damages, $2,500 for violation of the WTPA's wage-statement provision, and prejudgment interest on the unpaid wages. (*See id.*, at 34-35.) The Court also indicated that it would award "reasonable attorneys' fees and costs, in an amount stipulated by the parties or, if necessary, to be determined by the Court based on a fee application to be submitted by Plaintiff no later than September 16, 2016." (*Id.*, at 35.)

On September 16, 2016, Plaintiff duly moved for the recovery of reasonable attorneys' fees and costs. (*See* Notice of Motion, dated Sept. 16, 2016 (Dkt. 48); *see also* Memorandum of Law in Support of Plaintiff's Motion for Attorneys' Fees, Costs, and Interest ("Pl. Mem."), dated Sept. 16, 2016 (Dkt. 49).) In support of his motion, Plaintiff also submitted a Declaration of counsel Shawn Clark, Esq. ("Clark") (*see* Declaration of Shawn Clark, Esq., dated Sept. 16, 2016 (Dkt. 49) ("Clark Decl.")) and time records for Clark and two other attorneys (*see* Clark Decl., Ex. A (Dkt. 49-1)). After requesting and receiving an extension of time (*see* Dkt. 52), Defendants filed a memorandum opposing Plaintiff's motion (*see* Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Attorneys' Fees ("Def. Opp. Mem."), dated Nov. 18, 2016 (Dkt. 53)). After requesting and receiving two extensions of time (*see* Dkts. 55, 57), Plaintiff filed a reply brief (*see* Reply Memorandum of Law in Support of Plaintiff's Motion for Attorneys' Fees, Costs, and Interest ("Pl. Reply"), dated Dec. 16, 2016 (Dkt. 58)).

Plaintiff requests an award of $24,132.50 in fees and $2,639.25 in costs, apparently representing all fees and costs incurred in this action. According to Plaintiff, an award of these sums would be "eminently reasonable, especially in light of the high degree of Plaintiff's success," in "prevail[ing] on multiple claims." (Pl. Mem., at 7.) Defendants, not surprisingly,

3

challenge these assertions, and argue that Plaintiff should be awarded "little or no attorneys' fees," in light of the dismissal of Plaintiff's FLSA claims and recovery of only seven percent (by Defendants' calculation) of the NYLL overtime compensation damages originally sought. (Def. Opp. Mem., at 1, 3, 14 & n.5.)

## DISCUSSION

### I.   APPLICABLE LEGAL STANDARDS

The NYLL allows for a prevailing plaintiff to recover his reasonable attorney's fees and costs. *See* N.Y. Lab. Law § 198(1-a); N.Y. Lab. Law. § 663(1); *see also, e.g.*, *Najnin v. Dollar Mountain, Inc.*, No. 14cv5758 (WHP), 2015 WL 6125436, at *4 (S.D.N.Y. Sept. 25, 2015). In fact, as the NYLL's fee-shifting provision is phrased as a mandate, "[d]istrict courts in this Circuit have held that the award of attorney's fees in wage and hour cases is mandatory when a plaintiff prevails." *Jimenez v. KLB Foods, Inc.*, No. 12cv6796 (JPO), 2015 WL 3947273, at *5 (S.D.N.Y. June 29, 2015) (collecting cases).

Nonetheless, the district court has discretion to determine the amount of attorneys' fees that would be appropriate to satisfy a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). As a general matter, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (lodestar calculation creates a "presumptively reasonable fee" (internal quotation marks omitted; citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008) and *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010))). The party seeking fees bears the burden of demonstrating that its requested fees are reasonable, *see Blum v. Stenson*, 465 U.S. 886, 897 (1984), and must provide the Court with sufficient

information to assess the fee application, *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

An attorney's hourly rate is considered reasonable when it is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11. Although the fee applicant has the burden of demonstrating prevailing market rates for comparable work, *see Broome v. Biondi*, 17 F. Supp. 2d 230, 237 (S.D.N.Y. 1997), the Court may also apply its "own knowledge" of rates charged in the community in assessing the reasonableness of the rates sought, *Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987). In *Arbor Hill*, the Second Circuit emphasized that the "reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. In assessing whether an hourly rate is reasonable, the Court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, it is within the Court's discretion to reduce the requested rate. *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

Where the requested amount of fees is excessive because the number of stated hours is greater than that which should have been required for the work produced, the Court should reduce the stated hours accordingly. *See Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir. 2002) (the time component should not reflect excessive hours). In determining whether an excessive amount of time was expended on the matter, the Court may consider, *inter alia*, the nature and quality of the work submitted by counsel in connection with the litigation, *see Kirsch v. Fleet St. Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *In re Agent Orange*

*Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987), as well as the degree of counsel's success, *see Hensley*, 461 U.S. at 436.

In addition to the lodestar amount, a prevailing plaintiff with a statutory right to recover attorneys' fees may also recover "'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted). Recoverable costs may include, *inter alia*, filing fees, and expenses incurred for service of process, transcripts, and interpreters. *See, e.g., Sermuks v. Orion Caterers, Inc.*, No. 15cv6461 (RJD) (RML), 2017 WL 1058479, at *8 (E.D.N.Y. Nov. 11, 2015) (permitting recovery of filing fees and expenses related to service of process) (report and recommendation), *adopted by* 2017 WL 1058479 (Feb. 2, 2017); *Hernandez v. Jrpac Inc.*, No. 14cv4176 (PAE), 2017 WL 66325, at *2 (Jan. 1, 2017) (finding that such costs are "of the type commonly reimbursed by courts in this District," and awarding costs for filing, service of process, transcripts, and interpreters (collecting cases)).

## II. PLAINTIFF'S FEE APPLICATION

### A. Attorneys' Fees

As noted above, Plaintiff seeks attorneys' fees in the amount of $24,132.50. He claims that this amount was incurred for 62.45 hours of work performed by three attorneys in connection with this case. (*See* Clark Decl., Ex. A (Dkt. 49-1).)

#### 1. Reasonable Rates

In addition to Clark, Plaintiff was represented in this action by attorneys Michael Faillace ("Faillace") and Joshua Androphy ("Androphy"), all of the law firm Michael Faillace & Associates, P.C. (the "Faillace Firm"), an employment-law firm located in Manhattan. (Pl. Mem., at 3-5.) Faillace is a partner at the Faillace Firm, and has been practicing labor and

employment law since 1983. (*See id.* at 3-4.) He has taught employment-discrimination law as an adjunct professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and Plaintiff's memorandum of law describes him as a "nationally-renowned speaker and writer on employment law." (*Id.*) He bills at a rate of $450 per hour. (*Id.* at 3.) Androphy is described as a "senior associate" who has practiced litigation since 2005 and wage-and-hour law since 2012. (*Id.* at 5.) He bills at a rate of $400 per hour. (*Id.*) Clark is described as a "sixth-year" litigation associate at the firm who has practiced litigation since 2010 and wage-and-hour law since February 2014. (*Id.* at 4-5.) He bills at a rate of $375 per hour. (*Id.* at 4.)

Although Defendants have raised no specific objections to Plaintiff's attorneys' claimed hourly rates, this Court may nevertheless exercise its discretion to review the appropriateness of those rates. *See Hensley*, 461 U.S. at 437. As Plaintiff has cited no case authority regarding market rates for attorneys practicing before this Court in wage cases, this Court will rely on its own review of recent cases in this District and on its own knowledge of prevailing rates, in determining the reasonableness of the rates being requested. *See Townsend v. Benjamin Enter., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012).

The hourly rates requested by Plaintiff's counsel, particularly those for Androphy and Clark, are somewhat higher than the "prevailing [rates] in the community for similar services by lawyers of reasonably comparable . . . experience." *Blum*, 465 U.S. at 895 n.11. Indeed, Courts within this District have recently reduced the billing rates requested by Faillace, Androphy, and Clark, for work performed on similar wage cases. *See, e.g., Hernandez*, 2017 WL 66325, at *2-3 (following a three-day bench trial, awarding fees at the rate of $400/hour for Faillace; $350/hour for Androphy (noting that Androphy, while an associate, had partner-level experience); and

7

$250/hour for Clark (noting inappropriateness of requested $375-per-hour rate for a mid-level associate, given that "experienced *partners* working on wage-and-hour cases bill in the range of $300 to $400 per hour") (collecting cases)); *Apolinario v. Luis Angie Deli Grocery Inc.*, No. 14cv2328 (GHW), 2015 WL 4522984, at *2-3 (S.D.N.Y. July 27, 2015) (following bench trial, approving Faillace's requested rate of $450/hour, but reducing Androphy's rate to $300/hour, in line with numerous cases setting "a rate of $300 per hour for senior associates with at least eight years of experience" (collecting cases)); *Marquez v. Erenler, Inc.*, No. 12cv8580 (GHW), 2014 WL 5847441, at *2-3 (S.D.N.Y. Nov. 10, 2014) (following bench trial, setting Faillace's rate at $400/hour, Androphy's rate at $300/hour, and Clark's rate at $200/hour). In fact, upon surveying precedent in this District for fees that had been awarded to the Faillace Firm, this Court, itself, has recently recommended, in the context of damages inquests, that Androphy's and Clark's rates be reduced to $300 and $225 per hour, respectively. *See Rodriguez v. Obam Mgmt.*, No. 13cv00463 (PGG) (DF), 2016 U.S. Dist. LEXIS 34154, at *74 (S.D.N.Y. Nov. 7, 2016) (amended report and recommendation); *Elisama v. Ghzali Gourmet Deli, Inc.*, No. 14cv8333 (PGG) (DF), 2016 U.S. Dist. LEXIS 58833, at *58 (S.D.N.Y. Nov. 7, 2016) (amended report and recommendation). This Court, though, has recommended approval of a billing rate of $450 per hour for Faillace, given his level of experience. *See Rodriguez*, 2016 U.S. Dist. LEXIS 34254, at *74.[3]

Based on the prevailing rates within this district, and in keeping with its recent recommendations, this Court, in the exercise of its discretion and for purposes of calculating the

---

[3] Although this Court recommended the somewhat reduced rate of $400 per hour for Faillace in *Elisama*, he did not seek recovery at a higher rate, in that case. *See Elisama*, 2016 U.S. Dist. LEXIS 58833, at *58.

lodestar, finds Faillace's requested rate of $450 per hour to be reasonable, but reduces Androphy's billing rate to $300 per hour, and Clark's to $225 per hour.

### 2. Reasonable Hours

In support of Plaintiff's request for attorneys' fees, the Faillace Firm has provided the Court with a copy of its time records, which appear to have been maintained contemporaneously during the course of the litigation, and which show the billable hours counsel expended during this action. (Clark Decl., Ex. A (Dkt. 49-1).) As with counsel's requested rates, Defendants raise no specific objections to the reasonableness of the claimed hours, but, once again, this Court exercises its discretion to review the submitted time records, and finds that certain reductions are appropriate. The Court also considers, separately, Defendants' argument that Plaintiff should not be awarded fees for all of the time expended by his attorneys on this matter, in light of Plaintiff's modest degree of success.

#### a. Review of Time Records

Most of the time entries contained in the Faillace Firm billing records adequately describe reasonable tasks that appear to have been performed within a reasonable amount of time. Some of the entries, however, reflect types of work that this Court has repeatedly found (in other cases involving the Faillace Firm) to be work not appropriately performed – or, at least, not appropriately billed – by Faillace himself or by senior associates at the firm. For example, this Court has seen a pattern of Faillace's billing for searching a "Corporation & Business Entity Database" (here, for .75 hours (*see id.* (time entry for Jan. 20, 2014))), presumably to gather basic information regarding the corporate defendant. This was research that presumably could have been performed easily by a junior attorney, or even by a paralegal. *See Almanzar v. 1342 St. Nicholas Ave. Rest. Corp.*, No. 14cv7850 (VEC) (DF), 2016 U.S. Dist. LEXIS 155116,

at *60-61 (S.D.N.Y. Nov. 7, 2016) (report and recommendation), *adopted by* 2017 U.S. Dist. LEXIS 47894 (Mar. 30, 2017).

Similarly problematic are the three entries by Clark (and one by Faillace) that refer to the "filing" of documents. (*See id.* (Faillace time entry of Feb. 4, 2014; Clark time entries of July 23, 2015, Nov. 16, 2015, and Feb. 5, 2016).) Filing a document is plainly a task that could have been performed by a junior associate or paralegal, billing at a lower hourly rate. *See, e.g., Lane Crawford LLC v. Kelex Trading (CA) Inc.*, No. 12cv9190 (GBD) (AJP), 2013 WL 6481354, at *9 (S.D.N.Y. Dec. 3, 2013), *report and recommendation adopted*, 2014 WL 1338065 (Apr. 3, 2014) (finding a reduction in hours to be warranted where a task could have been performed by an associate or paralegal who billed at a lower rate). Moreover, each of Clark's time entries that refer to the filing of documents present additional concerns, as, on their face, they indicate that Clark spent several *hours* on filing. (*See, e.g.*, Dkt. 49-1 (Clark time entry of Feb. 5, 2016, indicating that the task of "Filed Post Trial mat[erials]" took 4.00 hours, at a cost of $1500).) As there are no separate entries for the drafting of these documents, the time entries for "filing" may have been intended to cover additional tasks, but there is no way for the Court to ascertain the nature of any other work that was actually involved, and thus no way for the Court to assess the reasonableness of the hours expended.

These billing issues are not substantial, but they are significant enough to warrant, in this Court's view, a five percent overall reduction in counsel's hours. *See Carey*, 711 F.2d at 1142, 1146 (noting that a percentage reduction may be applied as a "practical means of trimming fat" from a fee application).

### b. **Degree of Success**

As to whether Plaintiff's counsel's hours should be reduced to account for Plaintiff's limited success in this case, the Court first rejects Defendants' assertion that Plaintiff should recover *no* fees because – according to Defendants – Plaintiff and/or his counsel chose to prosecute his FLSA claims in bad faith. As already noted (*see supra*, at n.2), the Court itself expressed concern as to Plaintiff's continued prosecution of his federal claims, but it stopped short, in making its post-trial findings, of ascribing improper motives. Instead, the Court afforded counsel "the benefit of the doubt" and described Plaintiff only as a "difficult client," prone to exaggeration. (8/15/16 Findings, at 25 n.7.) Accordingly, the Court will not deny fees altogether, although, in light of the dismissal of Plaintiff's FLSA claims and substantial narrowing of his NYLL claims, it agrees with Defendants' fallback position that some reduction in counsel's compensable hours would be appropriate. (*See* Def. Opp., at 6 (arguing that "'the most critical factor in a District Court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the Plaintiff'" (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992))).)

If Plaintiff's unsuccessful FLSA claims were severable from his claims brought under the NYLL, then this Court could, as Defendants suggest, "exclude time spent on [those] unsuccessful claims when awarding reasonable attorneys' fees." (*Id.* at 11 (citing *Hensley*, 461 U.S. at 435 ("[W]ork on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved.").) Defendants are correct that courts typically exclude, from attorneys' hours, those "hours dedicated to severable unsuccessful claims." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). Here, though, the Court sees no meaningful way to "sever" time devoted to Plaintiff's litigation of his FLSA claims, including any effort to

11

establish enterprise coverage. Nothing in the time records submitted by the Faillace Firm illuminates which hours were devoted to litigating the issue of FLSA coverage, and which were devoted to litigating the issue of unpaid overtime compensation, common to both Plaintiff's FLSA and NYLL claims. Further, this Court is not aware of any precedent – and Defendant has identified none – where, for purposes of calculating attorneys' fees, a court has severed an FLSA claim from a NYLL claim, when one type of claim was unsuccessful at trial.

Defendants also argue, more persuasively, that, regardless of the severability of Plaintiff's FLSA claims from his NYLL claims, a "percentage deduction" from the total amount of Plaintiff's requested fees should be imposed, due to Plaintiff's "stark lack of success." (Def. Mem., at 12.) Defendants acknowledge that courts do not adhere to a strict "rule of proportionality" between a Plaintiff's recovery and his requested fees,[4] but argue that courts should "'give primary consideration to the amount of damages awarded as compared to the amount sought'" when determining whether to impose a percentage deduction due to a plaintiff's lack of success. (*Id.*, at 12 (quoting *Kassim v. City of Schenectady*, 415 F.3d 246, 254 (2d Cir. 2005).) In other words, Defendants contend that, while proportionality between damages and requested fees is not required, proportionality between the damages sought and those recovered should be considered.

This Court agrees that Plaintiff, despite being the "prevailing party," can hardly be described as having achieved a "high degree" of success. (Pl. Mem., at 6.) "A district court's assessment of the degree of success achieved in a case is not limited to inquiring whether a plaintiff prevailed on individual claims," and "[b]oth the quantity and quality of relief obtained,

---

[4] Indeed, as fee-shifting statutes are intended to assure "that civil rights claims of modest cash value can attract competent counsel," "[t]he whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery." *Millea*, 658 F.3d at 169 (emphasis in original).

12

as compared to what the plaintiff sought to achieve . . . are key factors in determining the degree of success achieved." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008). Here, all of Plaintiff's federal claims were dismissed, and, although Plaintiff still recovered state-law damages for unpaid overtime compensation, that recovery was for less than one-seventh of the time frame for which such damages were sought, and, even as to that shorter period, the overtime hours demonstrated at trial were considerably fewer than what Plaintiff had alleged. This resulted in a far more modest recovery than Plaintiff sought. (*Compare* Plaintiff's Proposed Findings of Fact and Conclusions of Law, dated Feb. 5, 2016 (Dkt. 46) ¶¶ 56-59 (seeking a combined total of $264,918.07 in damages, liquidated damages, statutory damages, and prejudgment interest), *with* 8/15/16 Findings, at 34-35 (awarding a total of $11,359.38 in damages, liquidated damages, and statutory damages, with prejudgment interest to be calculated by the Clerk of Court).)

A reduction of the size advocated by Defendants, however, would be excessive. Defendants cite *Barfield* for the proposition that Plaintiff's failure to obtain Court approval for an FLSA collective warrants a 50 percent reduction in the requested fees. (*See* Def. Mem., at 8 (citing *Barfield*, 537 F.3d at 132).) Unlike in *Barfield*, however, where counsel devoted four months to a motion seeking certification of a collective action, *see Barfield*, 537 F.3d at 152-53, Plaintiff here never filed such a motion. Additionally, the work required to achieve Plaintiff's recovery of unpaid overtime compensation under the NYLL, even if not all of the overtime pay sought, overlapped substantially with the work that was needed to prosecute Plaintiff's FLSA claims and the portion of his NYLL overtime claims on which he did not prevail. In other words, had Plaintiff proceeded from the outset seeking only the limited amount of unpaid overtime compensation actually obtained, it is far from clear that the fees incurred would have

13

been substantially reduced. *See Pereyra v. Fancy 57 Cleaners, Inc.*, No. 11cv1522 (RJS), 2014 WL 12575718, at *8 (S.D.N.Y. Feb. 28, 2014) (where defendant was found liable for violating federal and state overtime provisions, and state, but not federal, minimum wage provisions, no fee reduction was imposed, as work conducted on "[t]he federal minimum wage claim did not add significant costs or efforts beyond what would have been expended on the other claims"). Mindful of these considerations, this Court finds that a 15-percent reduction in Plaintiff's requested fees, to account for Plaintiff's limited success, is warranted, and will incorporate that 15-percent reduction into its lodestar calculation, as shown below. *Cf. Song v. 47 Old Country, Inc.*, No. 09cv5566 (LDW) (SIL), 2015 WL 10641286, at *1, *6 (E.D.N.Y. Oct. 1, 2015) (applying 10-percent reduction to account for plaintiffs' lack of success in action where plaintiffs prevailed on their FLSA and NYLL claims, but not on their New York State Human Rights Law claims) (report and recommendation), *adopted by* 2016 WL 1425811 (Mar. 31, 2016).

### 3. Lodestar Calculation

Based on the foregoing, the Court calculates the lodestar in this case as follows:

| Attorney | Hourly Rate (as reduced by this Court) | | Hours Billed (reduced by 20%) | | Total |
|---|---|---|---|---|---|
| Faillace | $450/hour | x | 7 | = | $3,150.00 |
| Androphy | $300/hour | x | 1.84 | = | $552.00 |
| Clark | $225/hour | x | 41.12 | = | $9,252.00 |
| | | | | | $12,954.00 |

Especially as the Court has already factored the degree of Plaintiff's success into its lodestar analysis, it sees no reason to diverge from the lodestar in this case.

**B.     Costs**

Plaintiff additionally seeks litigation costs, in the amount of $2,639.25, for filing and service fees, a "[t]rancript," and an "interpreter fee." (Dkt. 49-1, at 3.) The litigation costs are adequately delineated in counsel's contemporaneous billing records, and this Court finds the requested costs to be reasonable and compensable. *See, e.g.*, *Apolinario*, 2015 WL 4522984, at *4 (awarding court filing, process server, and transcript fees, as well as fee for Spanish interpreter).

**CONCLUSION**

For all of the foregoing reasons, it is hereby ORDERED that, pursuant to N.Y. Lab. Law § 198(1-a) and N.Y. Lab. Law § 663(1), Plaintiff is awarded $15,593.25 from Defendants, representing the attorneys' fees and costs reasonably incurred by Sanchez in pursuing his claims under the NYLL and WTPA. The Clerk of Court is directed to enter this award of attorneys' fees and costs, to close the motion docketed in this action as Dkt. 48, and to close this case on the Docket of the Court.

Dated:  New York, New York
        May 22, 2017

                                              SO ORDERED

                                              _____
                                              DEBRA FREEMAN
                                              United States Magistrate Judge

Copies to:

All counsel (via ECF)